HAMMOND BUCKLE CO. *v.* HATHAWAY *et al.*[1]

*(Circuit Court, D. Connecticut.* December 1, 1891.)

1. PATENTS FOR INVENTION—PATENTABILITY—CLASPS AND BUCKLES.

Letters patent No. 251,246, granted December 20, 1881, to Theodore E. King and Joseph Hammond, Jr., are for an improvement in glove-fasteners, shoe-buckles, and similar articles, which consist of a tongue-plate, a tongue or lever pivoted to the tongue-plate, and a slotted catch-plate, with which the tongue can be engaged, and by which the two parts of the buckle are drawn together and securely fastened. The improvement consisted in dispensing with the spring element usually found in pre-existing devices, which operated on the tongue, and held it in an open or closed position. *Held,* that this patent is void, for letters patent granted November 9, 1880, to Charles F. Littlejohn, were for the same device as applied to carriage boot-flaps; and it involved no invention to apply it to wearing apparel.

2. SAME—EXTENT OF CLAIM—PRIOR STATE OF ART.

In letters patent No. 301,884, granted July 15, 1884, to the same persons, for an improvement in similar buckles, the tongue-plate was a single piece of metal, doubled upon itself, and forked at its rear end next the catch-plate. The tongue swung in this bifurcation, its pivot being located underneath the tongue-plate. Indentations in the under-fold of the tongue-plate partially embraced the ends of the pivot-pin, which was held between the two folds. The object of this construction was to cause the tongue-plate, or a portion of it, to extend rearward of the tongue, forming there a bearing surface for the catch-plate. The first claim was: "In combination, the catch-plate, the tongue pivoted directly to the tongue-plate, and the tongue-plate extending rearward of the pivot and in contact with the catch-plate when the parts are engaged." *Held* that, as the claim was merely for an improved clasp, which had many predecessors, it must be so limited that the tongue should be not only pivoted directly to the tongue-plate, but below its face, and between its bifurcated ends.

3. SAME—INFRINGEMENT—BUCKLES.

This patent is infringed by a buckle which is composed of two plates riveted together, the lower being provided with projections in which the pivots of the tongue turn, and which fit into openings in the upper plate when the two lie together; and the upper and spring-plate being bifurcated, and extending on both sides of the tongue rearward, to afford a bearing surface for the catch-plate, though the lower plate has no such extension.

In Equity. On final hearing.
*George W. Hey,* for plaintiff.
*Frederick P. Fish,* for defendants.

SHIPMAN, J. This is a bill in equity, based upon the alleged infringement of three letters patent,—No. 251,246, dated December 20, 1881, for a glove-fastener; No. 301,884, dated July 15, 1884, for a shoe-clasp, each of said patents having been issued to Theodore E. King and Joseph C. Hammond, Jr.; and No. 341,422, dated May 4, 1886. The complainant submitted to a dismissal of its bill so far as the third patent is concerned.

No. 251,246 is for an improvement in glove-fasteners, shoe-buckles, and similar articles, which consist of a tongue-plate, a tongue or lever pivoted to the tongue-plate, and a slotted catch-plate, with which the tongue can be engaged, and by which the two parts of the buckle are drawn together and securely fastened. The improvement consisted in dispensing with the spring element, which usually was found in pre-existing devices, and which was generally caused by some kind of a spring-plate, which operated upon the tongue, and held it in open or closed position, like the spring that acts on the blade of a pocket-knife,

[1] Rehearing denied, 48 Fed. Rep. 834.

and substituting therefor a hook or tongue of peculiar curvature. The patent also spoke of a stop to prevent the tongue from swinging too far back, but there is no patentable novelty in that part of the alleged improvement, for, as it was said by the patent-office examiner in the correspondence relative to the grant of this patent, "with this kind of hook it is believed to be impossible to hinge the two parts without having the edge act as a stop." In order that the description contained in the specification and the claim of the patent may be understood it is necessary to define the meaning of the terms which are used. The hook, C, is the tongue; the curve, $C^1$, is the arched part of the tongue, which extends outwardly over the pivot; the loop, $C^2$, is the bend or bight of the tongue; the plate, A, is the catch-plate; and the plate, B, is the tongue-plate, having an opening, $B^1$, whose outer edge serves as a stop. The specification says:

"C is the hook, which is hinged to the inner edge of B, and passes through an opening in A when the two edges are secured together. The hinged hook or tongue, C, has a curved back, $C^1$, which increases slightly in distance from the hinge as it reaches the loop, $C^2$, so that the point at which the plate, A, rests when the clasp is shut is the most distant from the center of any part of the loop, $C^2$. This point, or deepest part of the loop, also lies in such a direction that when strain is brought upon the fastener it tends to draw the outer end, which rests upon the plate, B, close down upon the plate with a slight pressure. * * * The opening, $B^1$, in the plate, B, through which the hinge passes, is made of such a width that when the hook is turned upward, as shown in Fig. 3, the part, $C^3$, strikes against the edge, $B^2$, and acts as a stop to prevent the hook from turning too far back."

The claim is as follows:

"The combination of the hook, C, having the curve, $C^1$, and the loop, $C^2$, with the plate, A, having the opening, $A^1$, and the plate, B, having the opening, $B^1$, substantially as described."

A hook or tongue of this peculiar shape, and used for precisely the same purposes, viz., having drawn two opposing edges together, to hold them together, and to remain in closed position by the strain of the other part of the buckle, was well known before the invention of the patentees. It is found in the Charles F. Littlejohn patent of November 9, 1880, for a carriage boot-flap hook. The entire hook is thus described: Above the folded boot-flap there was a standing strap and a free strap below. A metal loop was attached to the standing strap, and a metal hook, with a loop at one end, was attached to the free strap by this loop. The loop was bent inward, and the end turned downward, so as to form a bearing surface substantially in line or slightly forward of the straight line of the strap. The bend of the loop portion was in rear of the point where the free strap was attached. To engage the free strap with the standing strap the hook was turned up, and its free end passed through the loop upon the standing strap, and was then turned down to bring its end against the free strap. The specification says:

"This brings the line of pull or strain at the bend and in rear of the point where the free strap is attached, so that the strain tends to force and hold the end or suitable bearing surface down and against the free strap."

The Littlejohn hook had substantially the same shape and mode of operation as the hook of No. 251,246. There was no novelty in the mode by which the old tongue was applied to the glove-fastener or the shoe-buckle, and there was no patentability in taking it out of its place in a carriage and substituting it for another tongue in the same general kind of a fastener upon wearing apparel.

In order to ascertain the character and validity of No. 301,884 it is necessary to know the state of the art at the date of the invention. Very many patents have been issued of late years for arctic buckles, some of them for minute advances in the art, so that the territory open to invention seems to have been fully explored and occupied. In this case the defendants were of opinion that the state of the art with reference to the improvement contained in No. 301,884 was shown at the date of the invention, with substantial clearness, by patents No. 191,758 and No. 215,824, which were also issued to Hammond & King. The tongue in patent No. 191,758 was hinged to an upper spring-plate, which plate was secured at its outer or front end to a lower plate, which was the tongue-plate, and which was attached to the shoe. The clasp of patent No. 215,824 had a spring-plate curved to fit the under side of the tongue-plate, and lying close to it, and held in place by the ends of the tongue-plate. The tongue passed up through a hole in the tongue-plate, had a projection on each side, which rested in raised projections at the sides of the tongue-plate, so as to form a hinge upon which the tongue turned. A projection acted downwardly upon the spring-plate, so that the pressure of the spring held the tongue open or shut. The catch-plate had also curved projections, which fitted upon the projections of the tongue-plate. The idea was that when the two parts of the clasp were together, the projections joined, and prevented the two parts from being drawn asunder longitudinally. The buckle of No. 301,884, so far as the first three claims are concerned, is described as follows: The tongue-plate was a single piece of metal, doubled upon itself, and was forked at its rear end,—*i. e.*, the end next the catch-plate. The tongue swung in this bifurcation, the pivot of the tongue being located underneath the tongue-plate. Indentations in the under-fold of the tongue-plate partially embraced the ends of the pivot-pin, which was held between the two folds. The specification says:

"It will be observed that this construction of the tongue-plate causes the tongue-plate, or a portion of it, to extend rearward of the tongue, forming there a bearing surface for the catch-plate, the result of which is, in use, that the whole structure is caused to move together when movement of the catch-plate is had, which unity of motion in the parts of the shoe-clasp preserves the two flaps of the shoe in a better relation to each other than in the case where the catch-plate can be tilted downward independently of the tongue."

When the tongue pivots are formed solely underneath the tongue-plate, the face of the plate may be made smooth. A cross-bar or projection on the tongue-plate back of the tongue made a stop which limited the backward play of the tongue. The first three claims, which are the only ones said to have been infringed, are as follows:

"(1) In combination, the catch-plate, the tongue pivoted directly to the tongue-plate, and the tongue-plate, extending rearward of the pivot, and in contact with the catch-plate when the parts are engaged, all substantially as described. (2) In combination, the catch-plate, the tongue pivoted directly to the tongue-plate, and the tongue-plate having a smooth surface from a point in the rear of the pivot to a point in front of the pivot, all substantially as described. (3) In combination, in a clasp, a tongue-plate, bearing a tongue pivoted directly to the tongue-plate and between its bifurcated ends by a pivot arranged below the surface of the plate, an inwardly projecting bar or lug, arranged adjacent to the tongue, and forming a stop whereby the backward play of the tongue is limited, and a catch-plate, all substantially as described."

The improvement consisted in having the body of the tongue plate extended on both sides of the tongue beyond the pivot, so as to form a bifurcation at the inner end of the plate in which the tongue plays, these extensions being for the purpose of forming supports upon which the catch-plate is drawn as the tongue is closed, and which prevent the catch-plate from changing its position. The pull of the tongue and the catch-plate upon each other is more efficient when the pivot is below the fold of the tongue-plate. It is plain that this buckle is a different thing, in the way in which and the means by which the catch-plate is made to be an efficient member of the buckle, from the preceding patents which have been described. The difference consists in the efficient support of the catch-plate, and this is accomplished by the bifurcated extensions of the tongue-plate which project rearwardly beyond the pivots. The question of importance is whether this improvement has the element of patentable invention. I do not think that the mere elongation of the tongue-plate would have been patentable, but I am of opinion that the way in which the lengthening was accomplished and the support was given to the catch-plate, viz., by the bifurcated extensions of the body of the tongue-plate on both sides of the tongue beyond the pivot, in which extensions the tongue plays, and upon which the catch-plate is supported in position, did show patentable invention. There was no invention in the production of smoothness of surface upon the face of the tongue-plate. If smoothness was desirable, it was easily attained by forming the sockets for the tongue-pivots solely in the lower fold of the plate. Neither was there any patentability in the stop. It was a familiar device. It had no new or different function, and there was no inventive skill in the means employed to put it into or to adapt it to the new tongue-plate. The first claim was made as broad as the patent-office would permit, and was intended to cover any tongue-plate to which the tongue was directly pivoted, and which extended rearward of the pivot, and came in contact with the catch-plate. This claim, being merely for an improved clasp, and one which had many predecessors, must be limited by construction to the invention as it was made, and therefore the details are important. It should be so limited that the tongue should be not only pivoted directly to the tongue-plate, but below its face, and between its bifurcated ends. The second claim was for the catch-plate and the tongue pivoted directly to the tongue-plate having a smooth surface. This combination, as an entirety, was not patentable. It was intended to be for the elements of the first claim,

plus a smooth tongue-plate; but inventive skill is required in a combination as well as an entirely new device, and there was no skill in so arranging the pivots of the tongue that the surface of the tongue-plate should be smooth. The third claim is for the elements of the first claim and the stop. A combination of devices, new or old, in order to be patentable, must produce some new effect or result, as the product of the combination. A stop was a familiar part of the tongue-plate. This stop was like its predecessors, and no skill was required to add it to the plate, and, when added, it produced its old, independent result. It was not a part of the improvement; it operated in its old way, and contributed no new result. This claim is not patentable. The two buckles which have been made by the defendant, and which are known in the case as "Defendant's Weld Buckle A," and "Defendant's Weld Buckle B," infringe the first claim of No. 301,884. Buckle C is not claimed to infringe this patent. There is more uncertainty in regard to the infringement by defendant's weld buckle D. It is composed of two plates, riveted together. The lower plate is provided with projections at its inner end, in which the laterally projecting pivots of the tongue turn; and the upper plate is provided with openings, which receive the top portion of the projections when the two plates lie together. It is the reverse of the method by which the tongue and tongue-plate of No. 215,824 are pivoted together. The upper and spring plate is bifurcated, and extends on both sides of the tongue rearward to afford a bearing surface for the catch-plate, but the lower plate has no such extension beyond the tongue-pivot to afford such a bearing. The buckle as a whole differs materially in appearance from the buckle of the patent. The projection at the end of the lower plate, in which the pivots turn, and the openings in the upper plate, which receive the top portion of the projections, are, in appearance, quite unlike the double leaves of the patented buckle, between which the pivot-pin is held. The extension of one side of the double plate is a departure from the form of the patented buckle. But, with some hesitation, I think that the essential and described elements of the first claim are present in buckle D, notwithstanding the differences in details of construction. Let there be a decree dismissing the bill as to patents Nos. 251,246 and 341,422, and for an injunction against the infringement of the first claim of No. 301,884, and for an accounting.