ENGLISH v. SUPREME CONCLAVE, IMPROVED ORDER OF HEPTASOPHS, et al.

(District Court, D. New Jersey. September 6, 1916.)

1. REMOVAL OF CAUSES ⬤⟳15—CAUSES REMOVABLE—"SUIT BROUGHT."

Where a complainant has filed a bill for an injunction in a state court, and obtained a temporary restraining order and an order to show cause, which were served, although no subpœna has issued, a "suit" has been brought within the removal statute (Judicial Code [Act March 3, 1911, c. 231] § 28, 36 Stat. 1094 [Comp. St. 1913, § 1010]).

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 25; Dec. Dig. ⬤⟳15.]

2. REMOVAL OF CAUSES ⬤⟳60—SEPARABLE CONTROVERSY.

A suit by a member of a fraternal order having a Supreme Conclave, which is incorporated under the laws of another state as a fraternal benefit association, and which issues certificates of insurance on the lives of members, and also having unincorporated local conclaves with which the members affiliate, to enjoin the Supreme Conclave from carrying into effect certain amendments to its by-laws, is removable by the corporation defendant, notwithstanding the joinder of the local conclave as a defendant and a prayer for an injunction to restrain it from in the future increasing the dues of members, which are entirely separate from the insurance assessments made by the Supreme Conclave; the only controversy under the issues tendered being between complainant and the foreign corporation.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 114; Dec. Dig. ⬤⟳60.]

In Equity. Suit by Nicholas C. J. English against the Supreme Conclave, Improved Order of Heptasophs, and another. On motion by complainant to remand to state court. Denied.

McCarter & English, of Newark, N. J., for complainant.

Olin Bryan, of Philadelphia, Pa., and W. Holt Apgar, of Trenton, N. J., for defendants.

RELLSTAB, District Judge. Nicholas C. J. English, a citizen and resident of New Jersey, on December 31, 1915, filed his bill in the Court of Chancery of that state against the Supreme Conclave, Improved Order of Heptasophs, a corporation incorporated and organized under the laws of the state of Maryland, hereafter called the Supreme Conclave, and the Garfield Conclave, No. 241, Improved Order of Heptasophs, unincorporated, located at Elizabeth, N. J., hereafter called the local conclave. The bill seeks to permanently enjoin the defendant from doing certain things hereinafter particularly mentioned. On the same day that court made an order requiring the defendant to show cause on January 11, 1916, why an injunction should not issue as prayed in the bill, with an ad interim stay covering the matters sought to be permanently enjoined. On the latter day the Supreme Conclave had the said cause removed into this court. No subp. ad. resp. has been issued in said cause.

The plaintiff moves to remand the cause to the state court upon the following grounds:

"First. Because said cause was not pending, so as to be removable under the statutes of the United States concerning the removal of causes.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Second. Because the controversy involved in the above cause is not between citizens of different states, but involves a controversy wherein citizens of the state of New Jersey are upon both sides."

[1] *As to the first ground:* If the cause should be remanded for this reason, nothing would prevent another removal as soon as subpœna should be issued. Section 28 of the Judicial Code, 36 Stat. 1087, provides (so far as pertinent):

"Any suit * * * which may hereafter be brought, in any state court, may be removed into the District Court of the United States."

The plaintiff contends that a suit is not brought in the state Chancery Court until subpœna issues. I think the plaintiff is estopped from raising this point. It would seem to be consonant with the true principles governing the administration of justice that one who brings another into a court of equity upon the allegation that a wrong, irremediable at law, has been done him, and succeeds in placing the alleged wrongdoer under judicial restraint, should be prevented from saying that no "suit" had been brought against him.

But, passing the estoppel: The plaintiff relies upon Hermann v. Mexican Petroleum Corp. (N. J. Ch.) 96 Atl. 492. In that case Vice Chancellor Backes held that:

"Before the issuing of process, a cause is not 'pending' in chancery, so as to make it the subject of removal into the law courts, under the Transfer of Causes Act (P. L. 1912, p. 417)."

On the hearing of the rule to show cause in that case the preliminary injunction was denied, and the bill dismissed. With the denial of such injunction the ad interim restraint ceased, and there was nothing calling for an answer from the defendant, as no subpœna had been issued. In such a situation, confronted with the alternative of transferring the cause to the law court or dismissing the bill, the learned Vice Chancellor held that, at that time, there was no suit "pending," as contemplated by the state Transfer of Causes Act (Laws N. J. 1912, c. 233, as amended by Laws N. J. 1915, c. 13), and dismissed the bill.

In the instant case the removal proceedings brought into the court, not only the filed bill, but the rule and ad interim restraint referred to. As the cause stood in the state court, and stands here, the defendants were and are required to make answer to the rule directed against them, and they continue under the restraint imposed upon them in such proceedings. Surely in every sense, except a technical one, such proceeding was and is a suit pending.

The words of a statute regulative of a constitutional right are not to be given a narrower meaning than they bear, or the context demands. The particular words "suit brought" should be so construed as to give them the full effect intended by the federal statute; i. e., the right of a defendant possessing the requisite qualification to remove into the federal court a proceeding instituted against him in a state court. Whatever the form of proceeding to bring a defendant into court, a suit is brought when such defendant is subjected to judicial orders.

While the filing of a bill in the state Court of Chancery may not be the commencement of a suit, so as to bring it within the meaning of

"pending" in a state statute, authorizing the transfer of a cause from one state court to another, the filing of an injunction bill in a state court, followed by an ad interim stay, pending the hearing of a rule to show cause why a preliminary injunction should not issue in said cause, is a suit within the meaning of the Federal Statute in question.

[2] *As to the second ground:* This calls for determining whether, as between the Supreme Conclave, the defendant removing the suit, and the plaintiff, in the language of said section 28, there is "a controversy which is wholly between citizens of different states, and which can be fully determined as between them." The case as made by the bill, summarized, is as follows: Plaintiff is a resident of Elizabeth, N. J., and a member of the defendant, the local conclave, located at said Elizabeth, which is one of a number of local conclaves affiliated with the Supreme Conclave, the other defendant. The latter is a corporation of Maryland and a fraternal benefit association engaged in a species of life insurance. The contract of insurance between the member and the organization is evidenced by a benefit certificate and the by-laws. The local conclave is the medium through which plaintiff obtained membership in the Supreme Conclave, and in addition it provides for sick benefits for its members under the terms of its by-laws. Plaintiff holds a benefit certificate of the Supreme Conclave which reads as follows:

"Improved Order of Heptasophs, Contributors.

"No. 36351.         Benefit Certificate.         $5,000.

"This certificate is issued to Bro. Nicholas C. J. English, a member of Garfield Conclave, No. 241, Improved Order of Heptasophs, located at Elizabeth, N. J., upon evidence received from said conclave that said brother is a fifth-rate contributor to the benefit fund of this order, and upon condition that the statement made by said brother in his application for membership in said conclave and that statement certified by him to the medical examiner, both of which are filed in the Supreme Secretary's office, be made a part of this contract, and upon condition that the said brother hereafter complies with the laws, rules, and regulations now governing said conclave and benefit fund, or that may in the future be enacted by the Supreme Conclave to govern said conclave and fund, these conditions being complied with, the Supreme Conclave of the Improved Order of Heptasophs hereby promises and binds itself to pay out of its benefit fund to wife, Ella J. English, within 60 days from receipt of satisfactory proof of death the sum of five thousand dollars, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said brother and upon the surrender of this certificate: Provided that said brother is in good standing in this order at the time of his death, and provided, also, that this certificate shall not have been surrendered by said brother and another certificate issued at his request in accordance with the laws of this order.

"In testimony whereof the Supreme Conclave of the Improved Order of Heptasophs has herewith affixed its seal and caused this certificate to be signed by its Supreme Archon, and attested and recorded by its Supreme Secretary, at Baltimore, Maryland, this 2d day of April, A. D. 1896.

"I hereby accept this certificate on the conditions therein named.

"Nicholas C. J. English, Holder of Certificate.

"Witness: P. A. Banker.
       "Andrew Altman, Archon.
       "V. M. Hall, Secretary.

"M. G. Cohen, Supreme Archon.
"Saml. H. Tattersall, Supreme Secretary.

"Garfield Conclave No. 241."

Plaintiff is still in good standing in said Supreme and local conclaves. By section 2, article 3, of the by-laws of the local conclave he was to pay it dues of 50 cents per month. About September 1, 1913, said sum was increased to 62 cents a month. Plaintiff has always paid said dues, which the local conclave levies, and in addition to them the Supreme Conclave levies, an assessment in the nature of a premium upon the life insurance agreed to be paid by said benefit certificate. By the by-laws of said Supreme Conclave said assessment is levied monthly, and must be paid monthly, or the benefit certificate is forfeited. At the time plaintiff received his certificate the assessment, exclusive of the local dues, was $7.70 per month. Said assessment was increased, respectively, to $12.45 and $17.40; the last continuing to and including December, 1915. Plaintiff has paid the assessments so levied, as well as said local dues. At a special session of the Supreme Conclave held at Harrisburg, Pa., in October, 1915, material changes were made in the by-laws, rules, and regulations of the said Supreme Conclave, affecting plaintiff's vested rights in said benefit certificate with reference to either the amount to be paid thereunder and out of its benefit fund upon the death of plaintiff, or the amount of the monthly assessments to be levied against him as a condition for his continuance in said conclave and of receiving the benefit of his certificate or both. Said by-laws as amended are unreasonable, confiscatory, and illegal. By said amendment the members of said Supreme Conclave have been arbitrarily divided into classes A and B, a division which did not exist theretofore. Class B includes members who joined the Supreme Conclave prior to January 1, 1914, of which plaintiff is one. Class A includes members who have joined since that date and those who may hereafter join. Separate treasuries exist for the disbursement of the benefit fund to care for the members of those classes respectively. No moneys received from new members will take care of the members of class B; the funds to pay the death benefit certificates of this class will have to be made up from increased assessments levied on such members. By the new by-laws, rules, and regulations an option is given to the members of class B to remain in that class by paying such further assessments as may be levied to pay maturing death benefit certificates, or to become members of class A, in which event they will be required to accept one of four conditions, designated options: As applied to plaintiff, who is 73 years of age, in addition to his paying the dues and per capita tax of the local conclave, he would be required to pay a monthly assessment of $50.05, under option 1, to receive $5,000, the full amount of his benefit certificate; $15.60 under option 2, to receive $2,589.80, less 4 per cent. interest from date of exercising said option to date of death, instead of the sum called for in his said certificate; $17.40 under option 3, to receive $1,338.65, instead of the sum called for in his said certificate; $29.75, under option 4, to receive $2,972.05, instead of the sum called for therein. To remain in class B, plaintiff is certain to be subjected to increased assessments, as the fund available for the payment of the benefit certificates is inadequate to meet such certificates as they ma-

ture; and as a result of said amended by-laws, rules, and regulations the plaintiff will be subjected either to a reduction of the sum to be paid under his benefit certificate at death, or to heavy increases in monthly assessments.

Besides the usual prayer for subpœna, answer, and general relief, the bill prays that the defendants may be enjoined from suspending plaintiff from membership in either conclave, and from forfeiting his benefit certificate on account of his failure to pay such assessments in the Supreme Conclave as may be levied in excess of the sum of $17.40 per month, or to pay such dues of the local conclave in excess of 62 cents per month; that the Supreme Conclave may be enjoined from assessing against plaintiff a greater assessment than $17.40 per month, and the local conclave be enjoined from assessing against him dues in excess of 62 cents per month, and that the defendants be further enjoined from putting into operation the proposed division of the members of each of said conclaves in accordance with the said new by-laws, rules, and regulations.

From this recital it appears that the plaintiff holds a membership in both the Supreme and local conclaves, and that upon payment of assessments to be levied by the Supreme Conclave and compliance with the by-laws, rules, and regulations of said conclave there will be paid at his death a specified sum as insurance, and that upon the payment of certain monthly dues levied by said local conclave he will receive benefits in case of sickness.

The alleged grievance is that the Supreme Conclave has illegally changed the contract of insurance between him and said conclave, and that unless it be restrained from putting its proposed change into force the plaintiff will be irremediably injured. There is no allegation that the local conclave has trespassed on the rights of the plaintiff. It is made a party, not because it is necessary to the determination of the controversy between the plaintiff and the Supreme Conclave in relation to such changes in by-laws, etc., but because, if the latter carries out the scheme of its new by-laws, and enforces the proposed classification of its membership, and he refuses to comply therewith and pay his assessments on the new basis, his membership in both conclaves will cease.

No present controversy, therefore, exists between the plaintiff and the local conclave. At the most, a controversy may arise when the Supreme Conclave ends the relation between it and the plaintiff. Such a controversy is at best but potential, and if it materializes will begin only when the controversy between the plaintiff and the Supreme Conclave is ended. The fact that the local conclave is the local agent for the collection of the proposed illegal assessments against the plaintiff does not alter the character of the controversy between him and the Supreme Conclave, nor make the former a necessary party for the determination of its controversy. The grievance, as shown, is not against any action of the local conclave, and a decree enjoining the Supreme Conclave from imposing or collecting said assessments will be binding upon any of its agents, including said local conclave. Hatch v. Chicago, R. I. & P. R. Co. et al., Fed. Cas. No. 6,204, 11 Fed.

Cas. 799, 803; Geer v. Mathieson Alkali Works, 190 U. S. 428, 433, 23 Sup. Ct. 807, 47 L. Ed. 1122.

The existing grievances, therefore, raise but one controversy, and that is wholly between the plaintiff and the Supreme Conclave, and is one which can be fully determined between them without the presence of the local conclave. That its determination also concludes or precludes another is no reason why it should not be treated as a separable one, and be subject to removal into the federal court. Regis v. United Drug Co. (C. C.) 180 Fed. 201, is not, as contended, opposed to this view. In that case the corporate defendant, who was joined with its president the resident defendant, was denied the right of removal, for the reason that the bill charged that the president in his individual capacity had committed the tort complained of jointly with the corporate defendant. In the instant case, as noted, there is no joint wrongdoing alleged or claimed.

The motion to remand is denied.