### ROBERTS v. UNDERWOOD TYPEWRITER CO.

(District Court, D. New Jersey. May 13, 1919.)

1. REMOVAL OF CAUSES ⊂⊃57—SEPARABLE CONTROVERSY—DETERMINATION WITHOUT ALL PARTIES.

For a nonresident defendant to remove a cause from the state to the federal court under Judicial Code, § 28 (Comp. St. § 1010), on the ground that there is a separable controversy, it must appear that there is a separable and distinct controversy between the moving party and its adversary, which can be fully determined and complete relief afforded as to the separate cause of action without the presence of others originally made parties.

2. REMOVAL OF CAUSES ⊂⊃61—RIGHT TO REMOVAL—COMPLAINT.

In determining whether a separable controversy exists, which is removable by a nonresident defendant from the state to a federal court pursuant to Judicial Code, § 28 (Comp. St. § 1010), the plaintiff's complaint governs.

3. REMOVAL OF CAUSES ⊂⊃61—SEPARABLE CONTROVERSY—COMPLAINT.

The complaint in an action begun in the New Jersey state court against a New Jersey corporation and a Delaware corporation which had assumed the contracts, etc., of the New Jersey corporation, *held* to show the existence of a separable controversy between plaintiff and the Delaware corporation; it appearing that the rights of the plaintiff against the New Jersey corporation were based on an express contract, while those against the Delaware corporation arose out of other transactions, and were implied by its assumption of the New Jersey corporation's obligations.

At Law. Action by Lyman R. Roberts against the Underwood Typewriter Company, a corporation of Delaware, and others, which was begun in the Supreme Court of New Jersey, but was removed by the named defendant to the federal court on the ground there was a separable controversy. On motion to remand. Motion denied.

Reed & Reynolds, of Newark, N. J., for plaintiff.
Pitney, Hardin & Skinner, of Newark, N. J., for defendant.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RELLSTAB, District Judge. On the application of the Underwood Typewriter Company, a corporation of Delaware (hereinafter called the Delaware company), a suit brought against it and two other defendants by Lyman R. Roberts, in the Supreme Court of New Jersey, to recover the sum of $250,000 damages, was removed into this court on the ground that there was a separable controversy between it and the plaintiff. The plaintiff moves to remand the cause to the state court. He and the Underwood Typewriter Company of New Jersey (hereinafter called the New Jersey company), one of the other defendants, are citizens and residents of New Jersey, and the remaining defendant, Charles L. Davis, is a citizen and resident of the state of Illinois. No relief is prayed against Davis; he being made a party defendant for the reason that he declined to be joined as a coplaintiff.

[1] The plaintiff contends that "the allegations of the complaint show a joint contractual obligation upon both companies and the joint breach by both companies," and the sole question on this motion is whether there is a separable controversy between the plaintiff and the Delaware company, within the meaning of section 28 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [Comp. St. § 1010]). This section, so far as pertinent, provides that—

"When in any suit * * * there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the District Court of the United States for the proper district."

"To ascertain the removability of a cause on the ground of the existence of a separable controversy, these tests are established: (1) There must be a separable and distinct controversy between the removing party and his adversary which can be fully determined as between them; and (2) the whole subject-matter must be capable of being so determined and complete relief afforded as to the separate cause of action without the presence of others originally made parties to the suit." Moloney v. Cressler (C. C. A. 7) 210 F. 104, 126 C. C. A. 618.

[2, 3] The plaintiff's complaint, which on this motion controls (Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514), in substance, and so far as pertinent to the cause of action sued upon, alleges that on or about April 3, 1908, the New Jersey company entered into a written agreement with the plaintiff and the defendant Davis (a copy whereof is annexed to and made a part of the complaint), whereby the New Jersey company agreed to manufacture a certain patented machine on a royalty and to use its best efforts to promote the sales thereof; that subsequently, after the acceptance by the New Jersey company of a model of such machine, plaintiff, at the request of both defendant corporations, made therein certain changes which were accepted by both companies; that on or about March 1, 1910, the Delaware company acquired the entire capital stock and assets of the New Jersey company and assumed all its obligations and liabilities, including the rights and obligations arising out of the written agreement; that both of the corporate defendants failed "to do and perform the things which they and each of them became obligated to do and perform under and by virtue of said agreement," but that on the contrary they had each—

"formed an alliance with a manufacturer of a competing machine under which they have advised prospective purchasers of machines covered by said agreement, to purchase such competing machine, and they and each of them have taken many other steps and have committed many other acts to prevent the marketing and promotion of sales of said machines, thereby depriving plaintiff of the large amounts of royalties which otherwise would have accrued and have been due to him under and by virtue of said agreement."

What liability the Delaware company incurred by reason of its request for changes in the machines and acceptance thereof is not stated, and, as it was not a party to the agreement referred to, any liability arising from such request and acceptance rests solely on its individual action in that behalf. If the Delaware Company incurred any liability to the plaintiff from its alleged assumption of the New Jersey company's obligations arising from the written agreement referred to, that, too, springs out of and rests solely on its individual undertaking.

The allegation that the defendant companies had each entered into an alliance with manufacturers of competing machines, etc., by means of which plaintiff has been deprived of royalties which otherwise would have accrued to him under said agreement, does not charge a joint liability; at best it alleges only that each committed a wrong against the plaintiff, and that each are liable for the damages accruing to the plaintiff by reason of their respective individual acts in that particular. The liability charged against the New Jersey company is based on its failure to perform its written agreement with the plaintiff; that against the Delaware company grows out of its acquisition of the New Jersey company's capital stock and assets, and is based on its assumption of that company's obligations including those arising out of the written agreement. In brief, the complaint charges that both companies are liable to the plaintiff in damages.

As to the New Jersey company, it is the breach of an express contract made by it with the plaintiff; while, as to the Delaware company, it is the breach of an obligation not based upon any express agreement made by it with the plaintiff, but arising by implication in his favor by reason of its assumption of the New Jersey company's obligations and of certain of its acts in relation to the subject-matter of the contract made by the plaintiff with the New Jersey company. The liability of the defendants to respond in damages does not arise out of a "joint contractual obligation" as contended by plaintiff, but out of acts having no common origin and which furnish separate causes of action based on different rights. Breaches of contract or duties, thus founded, present separate and distinct controversies. Neither of these companies is a necessary or indispensable party to the full determination of the controversy between the plaintiff and the other company, or for enforcing any judgment which he might recover against either, and as the other jurisdictional facts necessary to give this court cognizance of the controversy between the plaintiff and the Delaware company are present, that controversy was properly removed here. Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122 (and cases cited); Mecke v. Valleytown Mineral Co. (C. C.) 89 Fed. 209, affirmed (C. C. A. 4) 93 Fed. 697, 35 C. C. A. 151; Iowa Lillooet C.

Min. Co. v. Bliss (C. C. N. D. Ia.) 144 Fed. 446; Chase v. Beech Creek R. Co. (C. C. W. D. Pa.) 144 Fed. 571; Manufacturers' Commercial Co. v. Brown Alaska Co. (C. C. S. D. N. Y.) 48 Fed. 308; Stimson v. United Wrapping Co. (C. C. W. D. N. Y.) 156 Fed. 298; Hough v. Societe Electrique Westinghouse de Russie (D. C. S. D. N. Y.) 232 Fed. 635; English v. Supreme Conclave, I. O. of H. (D. C. N. J.) 235 Fed. 630.

The motion to remand is therefore denied.

---

## THE VIGO.

### (District Court, S. D. New York.   April 5, 1919.)

1. SHIPPING ☞47—CHARTERS—CONSTRUCTION—WHARFAGE.

   Under a clause of a charter party requiring the ship to deliver her cargo alongside any wharf or pier designated by charterer, she cannot be required to pay wharfage for use of a designated pier after her cargo has been discharged thereon.

2. SHIPPING ☞47—CHARTERS—CONSTRUCTION—"PORT CHARGES."

   Under a charter party requiring the charterer to pay expense of discharging, and the ship to pay all port charges as customary, and to deliver the cargo alongside any wharf or pier designated by charterer, port charges for which the ship is liable include the cost of her berth while discharging, although alongside a private pier, but not the charge for use of the pier for receiving the cargo.

   [Ed. Note.—For other definitions, see Words and Phrases, Port Charges.]

In Admiralty.   Libel in rem against the steamship Vigo.   Decree for libelant.

This is a suit in rem against the steamer for breach of a provision in the charter party entered into on the 24th day of March, 1917. The charter party was for a voyage from Palamo, Spain, to the port of New York and the libelant, who was the charterer, paid a bill for wharfage at Stapleton Pier, Staten Island, for a period of 6 days, during which the Vigo was discharged and her cargo lay on the pier. The total amount paid by the libelant was $729. The ship occupied only one day in discharging, and the remaining part of the charges were for the use of the pier while the cargo remained there.

Haight, Sandford & Smith, of New York City, for libelant.
Kirlin, Woolsey & Hickox, of New York City, for claimant.