KIEFER et al. v. CITY OF IDAHO FALLS et al.

District Court, D. Idaho, E. D. April 26, 1927.

No. 648.

Removal of causes ⚖═37—Citizens' suit against city, officers, and foreign company held not removable as wholly between "citizens of different states," as company could not be aligned against all others (Comp. St. § 1010).

In suit by citizens and taxpayers against a city, its officers, and a foreign company, to enjoin the carrying out of a contract alleged to have been fraudulently entered into by them, and which, under the allegations of the bill, the officers as well as the company insist is valid and should be carried out, *held*, that there is not a controversy wholly between citizens of different states, necessary under Comp. St. §

1010, for removal, as the city and its officers cannot by rearrangement of parties be aligned with plaintiffs on one side of the controversy.

In Equity. Suit by H. W. Kiefer and others against the City of Idaho Falls and others, removed from state court. Cause remanded.

D. E. Rathbun and A. H. Wilkie, both of Idaho Falls, Idaho, for plaintiffs.

A. D. Ericksen, Paul T. Peterson, O. A. Johannesen, and Otto McCutcheon, all of Idaho Falls, Idaho, for defendants.

CAVANAH, District Judge. The question for decision is on the motion to remand the case to the state court, from which it is here on petition for removal of one of the defendants, Layne-Bowler Chicago Company, a Delaware corporation, on the ground that there is a diversity of citizenship as between it and the plaintiffs. H. W. Kiefer and others, who are citizens and taxpayers of the city of Idaho Falls, a municipal corporation of the state, brought this suit in the state court against the city and its mayor, councilmen, and city clerk, and the Layne-Bowler Chicago Company, in which they seek an adjudication of the validity of certain contracts between the defendant city and the Layne-Bowler Chicago Company, and restraining the carrying out of the same, wherein it is provided for the securing of a water supply for the city. It appears from the record that, when this suit was originally instituted, the defendant Layne-Bowler Chicago Company was not made a party, but upon the suggestion of the court, at the time the demurrer of the city to the original bill was presented, the defendant Layne-Bowler Chicago Company was brought in as an additional defendant in the amended bill. The amended bill enlarged the cause of action and relief prayed for, which included the restraining of further operations under the original contract that had been partly performed.

The defendant city and its officers appeared and filed a general and special demurrer, and, in response to the order of the court to show cause why the temporary injunction order should not be continued, joined issue on the material allegations of the bill. At the time the defendant Layne-Bowler Chicago Company filed its petition for removal, it also filed its general and special demurrer, which appears to be identically the same as the demurrer of the city. Although the state court refused to make an order of removal, there is no question raised here as to the proper steps not having been taken by the petitioner in presenting its petition for removal of the cause to

this court. The only ground upon which the petitioner relies is that there is a diversity of citizenship as between it and the plaintiffs and the defendant city and its officers, after the court shifts the defendant city and its officers to the plaintiffs' side, as their actual interest in the controversy is the same as the plaintiffs.

It is undoubtedly the duty of the court, in determining whether there is the requisite diversity of citizenship, to arrange the parties with respect to the actual controversy, looking beyond the formal arrangement made by the bill. Removal Cases, 100 U. S. 457, 25 L. Ed. 593. But in doing so it must recognize the general rule that, where the record discloses a bona fide controversy between the plaintiffs, who are citizens of the state in which the action is instituted, and the city and its officers, also citizens of the same state, or where the city and its officers are aligned with the non-resident defendant as being necessary parties, and where their relations to the subject-matter or the position taken are on the same side of the dispute, and the rights of the plaintiffs by shifting the positions would not be protected, the cause is not removable.

The inquiry then is: Does the position of the parties in the present case bring them under this principle of law? To determine this question of fact, we find from an analysis of the bill and petition for removal that in the spring of 1926 the mayor and council of the city employed the defendant Layne-Bowler Chicago Company to make a survey of the water situation in the city, with the object of investigating a proposed deep well system. After the investigation was made, the company recommended that an adequate supply of water for domestic and municipal purposes could be obtained from deep wells at a depth of approximately 750 feet. Thereafter the proposition of whether bonds should be issued for the purpose of sinking and equipping the deep well system for water supply for the city, to be used in lieu of the present supply derived from the river, was submitted to the voters, who defeated the same. On June 3, 1926, the mayor and council passed an ordinance appropriating funds for various purposes for the fiscal year, in which they included the sum of $24,000, to be expended for the sinking of a test well to ascertain the quantity and quality of water that might be obtained, and after receiving bids for the same, on August 12, 1926, entered into a contract with the defendant Layne-Bowler Chicago Company, which plaintiffs aver incurred a debt in excess of the income in revenue of the city, and contrary to the provisions of the constitution of the state. Under this contract the Layne-Bowler Chicago Company drilled a test well to a depth of 310 feet on property owned by the city, with a capacity of approximately 4,000 gallons per minute. Soon after the test well was equipped with pump, the company proposed to the mayor and council, by resolution prepared by it, that it be authorized to drill two additional wells on its property, upon the theory of amending the contract between it and the city.

It seems that, shortly after this proposal was made, the mayor and council called a public meeting of the citizens of the city, which was held on March 10, 1927, for the purpose of receiving an expression of the public sentiment of the city in regard to the proposal, and by which, as stated by the mayor, future action in the matter would be largely governed. A vote was taken at the meeting, and the proposal was defeated by a majority vote of those present. After this meeting, and during the same month, the mayor and council met in special session to consider the proposal, and receive the opinion of the city attorney as to the legality of entering into a contract covering the proposal, or amending the original contract, both of which the city attorney advised would be illegal. The attorneys for the company presented at the same time their opinion, in which they held that the city had authority to execute the amended contract, providing for the drilling and equipping of two additional wells, and which was adopted by the mayor and council.

It is further alleged in the bill that the original and amended contract both violate certain provisions of the Constitution and laws of the state, as the cost to the city of sinking and equipping the two additional wells, according to the plans, if let at competitive bidding to the lowest and best bidder, would not exceed the sum of $30,000, whereas by the terms of the amended contract the ultimate cost to the city, if purchase was made, would exceed $100,000, and if leased at 3 cents per 1,000 gallons the cost to the city would be, if based upon an estimated daily consumption of eight million gallons, the sum of $78,110 annually for a period of 30 years (if option to purchase is not exercised), or a total of $2,343,300, which would greatly exceed the revenue that the city would have available for that purpose, without taking into consideration the other necessary operating costs, which would require the approval by two-thirds vote of the qualified voters of the city.

In this connection the plaintiffs charge that the city and its officers are entering into

an entirely new and different contract than the original one for the drilling and equipment of the two additional wells, without submitting the same to competitive bidding, which would result in a direct loss to the plaintiffs and other taxpayers of the city of about $100,-000. The further charge is made that the mayor has disregarded his statement, made at the public meeting, in which he stated that they would be governed by the decision of those expressed at the meeting, and that the wells would be constructed upon city property; whereas the contract for the additional wells provides that they should be drilled upon property owned by the company. Actual favoritism to the company and fraud upon the taxpayers and water users of the city are charged, if those contracts are consummated, as they will bring about an abandonment and loss of the city's present vested water right and a waste of public funds, and unless the mayor and council are restrained they will pay over to the defendant company, of the funds of the city, large inequitable sums of money, and cause the taxpayers and water users of the city to suffer great damages. These facts are not denied on this hearing, and I am required, under the recognized rule, to accept them as true. Roberts v. Underwood Typewriter Co. (D. C.) 257 F. 583; Vadner v. Vadner et al. (D. C.) 259 F. 614.

The petitioner contends in its petition for removal that this suit is one in which there is a single controversy and in which there is involved the liability of the city under the contracts, and on one side of the dispute are the plaintiffs and the city, who are residents and citizens of the same state, while upon the other side is the defendant company, a citizen of the state of Delaware; that mere form of the pleadings should be put aside, and the parties placed upon different sides of the matter in dispute according to the facts, and thus sustain the jurisdiction of the federal court, if possible; but the court cannot change the case from that stated by the plaintiffs in their bill. Mountain View Mining & Milling Co. v. McFadden, 180 U. S. 533, 21 S. Ct. 488, 45 L. Ed. 656; Venner v. N. Y. Central Ry. Co. (C. C. A.) 293 F. 373.

Tested, then, by this rule, as it must be, the cause of action alleged in the bill and the attitude of the defendant city, and its mayor and council, and the company, do not present a situation wherein it can be said that the only dispute is one between the plaintiffs and the city on one side, and the defendant company on the other, for it is apparent that a single cause of action does exist, in which all of the defendants are on one side of the controversy and the plaintiffs on the other, as the defendants have joined together and are attempting to uphold the validity of the contracts in question, which were entered into between them. The city and its officers insist that these contracts are valid, and should be carried out, for we find that they have in the state court and are here urging that the plaintiff should not recover. They are in no sense merely formal parties to the suit, but are rightly and necessarily made defendants. They all unite in defending the acts complained of.

This, then, presents the situation that, should the court shift the defendant city and its officers from the side of the defendants to the plaintiffs, we would still have them contending that the defendant city is entitled to have the contracts decreed to be legal and binding upon the city, which would affect and may defeat the interests of the plaintiffs. Under the material allegations of the bill, which are not controverted by the defendant company in its petition for removal, where the charge is made that the defendant city's mayor and council have entered into these contracts in fraud with the defendant company, and that they are contrary to certain provisions of the Constitution and laws of the state, leaves beyond question the thought that these defendants have all aligned themselves together against the cause of action presented in the bill.

The issue, then, here is clear and distinct, as it appears from the charges in the bill and the petition and the attitude of the defendants, that the parties are now arranged on opposite sides of the dispute, and that the defendant city and its officers have such a relation to it as to require that they be treated as necessary parties defendant. The doctrine is well settled that, where officers of public or private corporations have entered into an illegal contract with another, or in behalf of the public or private corporation have performed an unlawful act, which is questioned, they are regarded as necessary parties to the action, and, if residents of the same state with the plaintiffs, the cause is not removable to the federal court. Central Railroad Co. of New Jersey v. Mills, 113 U. S. 249, 5 S. Ct. 456, 28 L. Ed. 949; East Tenn., Va. & Ga. R. R. Co. v. Grayson, 119 U. S. 240, 7 S. Ct. 190, 30 L. Ed. 382; Venner v. Great Northern Ry. Co., 209 U. S. 24, 28 S. Ct. 328, 52 L. Ed. 666; State of Missouri, to the Use of Public School Funds of New Madrid County, v. New Madrid County et al. (C. C.) 73 F. 304.

It is manifest, from this general analysis

of the bill, that the defendants mayor and council of the city are charged with entering into certain illegal contracts, under which large sums of public moneys of the city will be paid to the defendant company, and are insisting that said contracts be carried out in fraud of the rights of the plaintiffs and other taxpayers of the city. It might be that, in order to do complete equity in this cause, the court will find it proper and necessary, under the allegations of the bill, in the event the complainants prevail, not only to set aside the contracts and restrain the city officials from paying out large funds of the city, but to ascertain if the officers of the defendant have indulged in favoritism to the defendant company, and exceeded their authority in fraud of the rights of the plaintiffs. Therefore the city and its mayor and council are essentially adversary parties to the plaintiffs.

The rule is concisely stated by the Supreme Court in the case of East Tennessee, Virginia & Georgia Ry. Co. v. Grayson, supra, wherein a certain stockholder of the Memphis & Charleston Company, a citizen of Alabama, brought an action against the Memphis & Charleston Company, a corporation existing under the laws of the states of Tennessee, Alabama, and Mississippi, and the East Tennessee, Virginia & Georgia Railway Company, a corporation existing under the laws of Tennessee and Georgia, to set aside a lease made by the Memphis & Charleston Company of its railroad to the East Tennessee, Virginia & Georgia Company, upon the ground that the lease was illegal, as follows:

"Neither is there a separate controversy in the case between the complainant and the East Tennessee, Virginia & Georgia Company. The principal purpose of the suit is to set aside the lease for want of authority to make it. For that purpose both the lessor and the lessee are necessary parties. Grayson is not suing for the Memphis & Charleston Company, but for himself. It is true a decree in his favor may be for the advantage of the Memphis & Charleston Company, but he does not represent the company in its corporate capacity, and has no authority to do so. As a stockholder he seeks protection from the illegal acts of his own company as well as the other. According to the allegations of the bill, it may fairly be inferred that a majority of the stockholders of the Memphis & Charleston Company have combined with the East Tennessee, Virginia & Georgia Company to sacrifice the rights of the minority, and this suit is in behalf of the minority to protect themselves against this unlawful and fraudulent combination. Left to themselves, the two companies will settle on a basis that will be ruinous to the interests of Grayson and those in like situation with himself. This he seeks to prevent."

It is also true in the present case that a decree in favor of the plaintiffs may be for the advantage of the city, but plaintiffs do not represent the city in its corporate capacity. As citizens and taxpayers of the city they seek protection from the illegal acts of the mayor and council of the city. According to the allegations of the bill and their attitude in this case, the mayor and council are opposing the plaintiffs and assisting the defendant company in securing the removal of the case to this court, and have combined with the defendant company to impose upon the plaintiffs and other taxpayers of the city the burden of the tax levies to pay for the cost of drilling and equipping the wells, which the plaintiffs in this suit seek to prevent. Crawford v. Seattle R. & S. Ry. Co. et al. (D. C.) 198 F. 920.

From what has been said the case is not removable because all of the parties on one side of the controversy are not citizens of different states from those on the other, and, that being the jurisdictional fact upon which the right to remove depends (U. S. Comp. Stats. § 1010), the motion to remand is granted.